## J. E. CROSS v. J. W. McKINLEY.

### No. 7159.

1.   **Fraudulent Conveyance—Charge—Intent.**—Suit for land against a defendant alleged to hold under a sale made with intent to defraud creditors.   The plaintiff held under levy and sale.   It was shown that the debtor had sold the land for $500, its value, of which $300 was in satisfaction of a debt, and the balance in money, which was all but a few dollars applied to payment of other debts.   The debtor testified that his sale was for the purpose of applying proceeds to payment of his debts.   *Held*, error to instruct that such facts entitled the plaintiff to recover without reference to the intent of the vendor.

2. · **Same—Case Adhered to.**—Hadock Bros. v. Hill, 75 Texas, 195, adhered to.

3.   **Impeaching Testimony—Declarations of Witness.**—A written statement made by a witness touching the matter of his testimony is competent to impeach him when different from his testimony and his attention called thereto.   That counsel attacking the witness had obtained the statement from the witness was immaterial.

APPEAL from Cooke.   Tried below before Hon. D. E. Barrett.
The opinion states the case.

·   *Davis & Harris*, for appellant.—The fourth clause of the charge of the court was error.   [See opinion.]   Weaver v. Nugent, 72 Texas, 272;

Ellis v. Valentine, 65 Texas, 532; Willis & Bro. v. Whitsitt, 67 Texas, 678; Nave v. Britton, 61 Texas, 572; Hudson v. Wilkinson, 61 Texas, 607; Van Hook v. Walton, 28 Texas, 59; Bump on Fraud. Conv., pp. 194, 203, 205; Hadock v. Hill, 75 Texas, 195.

*Mathis & Lewis*, for appellee.—1. A creditor may receive from his debtor, with notice of the latter's insolvency, enough property to pay his debt, and he may receive more of such property than is necessary to satisfy his debt if he is bound by the terms of the sale to see that the excess of the purchase money over his debt is applied to the payment of other debts; otherwise the transaction is fraudulent. Elser v. Graber, 69 Texas, 222; Ellis v. Valentine, 65 Texas, 532; Seligson v. Brown, 61 Texas, 180; Oppenheimer v. Halff, 68 Texas, 409; Brown v. Vaughan, 70 Texas, 47.

2. There can be nothing clearer or better settled than that it is proper for the court to charge the jury directly upon the legal effect of the admitted or uncontroverted facts in evidence. Eason v. Eason, 61 Texas, 225; Teal v. Terrell, 58 Texas, 261; Hedgepeth v. Robertson, 18 Texas, 871; Railway v. Stewart, 57 Texas, 170; Mitchell v. De Witt, 20 Texas, 294; Ellis v. Valentine, 65 Texas, 549; Bond v. Mallow, 17 Texas, 636; Wintz v. Morrison, 17 Texas, 387.

TARLTON, JUDGE, *Section B.*—This was an action of trespass to try title to recover seventy acres of land in Cooke County, brought by the appellee McKinley March 30, 1888, against the appellant J. E. Cross. Both parties claimed through J. L. Mann, the appellee under a sheriff's sale made on the first Tuesday in December, 1887, by virtue of a levy made November 4, 1887, and the appellant under a deed from J. L. Mann, dated October 25, 1887, acknowledged and recorded October 29, 1887. The appellee also alleged that the deed from Mann to appellant was made with intent to defraud creditors, and asked that it be canceled on account of it being a cloud on his title. A trial was had on the 9th day of May, 1889, resulting in a verdict and judgment for the appellee, from which the appellant Cross has prosecuted this appeal.

Appellant's first assignment of error complains of the fourth clause of the court's charge, which clause is as follows: "But if you (the jury) find from the evidence that at the time of the conveyance of the land in controversy by J. L. Mann to defendant the said Mann was insolvent, and that said land was the only property he owned that was subject to execution, and that said Mann was indebted to plaintiff, and that these facts were known to defendant or could have been known to him by the exercise of ordinary diligence; and if you further find that the land was conveyed to defendant in consideration that defendant would satisfy the debt of Mann to Johnson, and that defendant did

satisfy said debt; yet if you further find that the land conveyed by Mann to defendant was worth more than was reasonably necessary to pay the debt of Mann to Johnson, and that defendant did not by the terms of the contract between himself and Mann obligate himself to see that the excess in the value of the land over Johnson's debt should be paid to other creditors of said Mann, then I instruct you that the sale from Mann to defendant is fraudulent, and you will find for plaintiff, even though you should believe from the evidence that such excess was subsequently actually paid by Mann in satisfaction of his debt."

The facts on which the foregoing instruction is founded are, as disclosed by the record, briefly as follows: The appellee McKinley was, at the time of the transaction below set out, a judgment creditor of J. L. Mann in the sum of $521.30, and had caused execution to be issued on the judgment. This was known to Cross, appellant, a nephew by marriage of Mann, who had been raised by the latter. Mann was insolvent, having no property subject to execution except the seventy acres in controversy. This fact was also known to Cross, who claimed to own some sixty-three head of cattle, recently bought by him, as he alleged, from one Jeff. C. Johnson, a resident of the Indian Territory. Mann in the fall of 1887 informed Cross that he owed Johnson $300 borrowed money, and that he wished to sell Cross the seventy acres of land in order to pay this debt. The land was worth $500, as admitted by both Cross and Mann. Appellant stated to Mann that if he could resell to Johnson for $500 the cattle he had recently purchased he would buy the land. He accordingly saw Johnson and sold and delivered the cattle to him at the price named. Mann then, on October 25, 1887, executed to appellant a deed conveying the land; Johnson canceled his indebtedness of $300 against Mann and paid to him the difference in money. Of this difference, according to the testimony of Mann and Johnson, $100 was paid in November and $100 at or about Christmas, 1887. In the meantime appellee had levied his execution on the land November 4, 1887, and bought it at sheriff's sale on the first Tuesday in December, 1887. Cross testifies that all the details of this transaction were arranged between Mann and Johnson; Mann testifies that they were arranged between Cross and Johnson. Mann further states that he applied the $200 received by him from Johnson to the payment of his debts, viz., to Howeth Bros. & Hulen $157, about $30 to the tax collector, and that he used the balance, about $12, for necessaries for himself and family; that he sold the land solely for the purpose of paying his debts. Cross stated that he did not know who wrote the deed from Mann to himself, nor who had it recorded; that he did not know what Mann did with the excess of $200 paid him by Johnson; that he knew only of the existence of the debt from what Mann told him; that he never inquired of Johnson nor of Mann whether the debt was bona fide or not.

It will be observed that the charge referred to declared the transaction fraudulent if the facts recited existed, without reference to the intent of the parties.   In the case of Hadock Bros. v. Hill, 75 Texas, 195, an instruction quite similar in its features to the charge under consideration had been requested of the trial court and refused, and its refusal assigned as error.   On appeal the action of the lower court was sustained.   We hence conclude that the charge, in ignoring the question of intent in the parties to the transaction, is erroneous.   The several special instructions referred to in appellant's third, fourth, and eighth assignments were inapplicable to the facts, in that they fail to refer to the time of the application by Mann of the proceeds of the sale to the payment of his debts.   We think that the fourth special instruction set out in appellant's fifth assignment of error was also properly refused.   It might have been understood by the jury as an intimation by the court that the contradictory character of the testimony of the appellant Cross was immaterial, and as restricting the effect of evidence pertinent to the issue as to whether the cattle transferred by Cross to Johnson were in truth the property of Cross, or whether they were the property of Mann fraudulently held by Cross to defeat the creditors of Mann.

The appellant's ninth and last assignment of error complains that the court erred in admitting over appellant's objection a certain written statement under the following circumstances:   While the witness J. C. Johnson was testifying on cross-examination he was shown by plaintiff's attorney, Yancey Lewis, Esq., a certain statement in writing purporting to contain what the witness knew about the transactions between himself, Cross, and Mann with reference to the issues involved in this case.   The witness recognized the genuineness of the statement and testified that it was written out under witness' direction by Lewis, who had, in contemplation of the trial of this case, come over to Leon in the Indian Territory to interview witness about what he knew concerning the case; that while he had requested Lewis to write the statement, witness refused to sign it.   The facts contained in the statement conflicted materially with the facts stated in the direct examination of the witness who was called by the defendant.   Afterward Lewis, the attorney, having testified on direct examination for plaintiff about this statement, testified on cross-examination that he obtained a commission and propounded interrogatories to the witness Johnson, in one of which he asked the witness if he did not make the statement referred to, etc., and that he thought such question proper as a necessary precaution to prevent the witness from being tampered with and induced to testify differently by Mann or his attorneys.   Plaintiff thereupon offered in evidence the written statement, and defendant's counsel objected, "because the statement was not signed nor sworn to, and because, as they

alleged, the course adopted by Lewis in procuring the statement was not the way to practice law."

We think the objection was properly overruled; the genuineness of the instrument, though not signed nor sworn to, was acknowledged by the witness, and it was plainly admissible as impeaching evidence under elementary rules.

For the error pointed out the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted June 9, 1891.