KAMPMANN et al. v. CROSS. (No. 5807.)

(Court of Civil Appeals of Texas. San Antonio. March 28, 1917. Rehearing Denied April 25, 1917.)

1. MASTER AND SERVANT ⚖➣408—INJURIES TO SERVANT—WORKMEN'S COMPENSATION ACT—PLEADING.

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz, an injured servant has the right to bring suit for damages in the district court, and if the employer then desires to defend on the ground that he is within the Compensation Act, it becomes a question of fact whether the employer has complied with the law.

2. MASTER AND SERVANT ⚖➣408—INJURIES TO SERVANT—WORKMEN'S COMPENSATION ACT—PERSON SUBJECT—POSTING NOTICE.

Mere posting of notice in a place of business that the employer is a subscriber under the Workmen's Compensation Act is not as a matter of law notice to the employé, but it is a question of fact whether it was sufficient.

3. MASTER AND SERVANT ⚖➣358—WORKMEN'S COMPENSATION ACT—CONSTRUCTION.

Workmen's Compensation Act, requiring the employer who becomes a subscriber to give notice thereof, should be strictly construed, since the giving of such notice and the act of the employer in becoming a subscriber deprives the employé of common-law rights.

4. MASTER AND SERVANT ⚖➣348—WORKMEN'S COMPENSATION ACT—CONSTRUCTION.

Vernon's Sayles' Ann. Civ. St. 1914, art. 5246yyy, defining a subscriber to the act, and articles 5246x, 5246xx, as to notice to the employé, are not in conflict.

5. MASTER AND SERVANT ⚖➣405(3) — WORKMEN'S COMPENSATION ACT—POSTING NOTICE—EVIDENCE—SUFFICIENCY.

Evidence held insufficient to show that the employer had posted notice that she was a subscriber under the Workmen's Compensation Act.

6. MASTER AND SERVANT ⚖➣351—WORKMEN'S COMPENSATION ACT—NECESSITY OF NOTICE.

Though the employer has become a subscriber under the Workmen's Compensation Act, she might still be liable under the common law to injured servant if she failed to give the servant the notice required by the act.

7. MASTER AND SERVANT ⚖➣408—WORKMEN'S COMPENSATION ACT—QUESTION FOR JURY.

It is not a question for the jury whether an employer is a subscriber under the Workmen's Compensation Act.

8. MASTER AND SERVANT ⚖➣358—WORKMEN'S COMPENSATION ACT—RIGHT TO RECOVER.

Though Vernon's Sayles' Ann. Civ. St. 1914, art. 5246i, deprives employés of a subscriber of the right of action against the employer for personal injuries, it must be construed with articles 5246x, 5246xx, requiring notice, and in the absence of such notice the relation of subscriber employer and employé does not exist.

---

⚖➣For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

9. WITNESSES ⊚═══392(1) — CONTRADICTION — WRITTEN STATEMENTS — NECESSITY OF SIGNATURE.

The written statement identified and proved to have been made by a witness contrary to his testimony on the trial is admissible to impeach him, though undated and unsigned.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1249–1251.]

10. TRIAL ⊚═══255(4) — INSTRUCTIONS — REQUESTS—LIMITING PURPOSE OF TESTIMONY.

If the undated and unsigned statement identified to be that of a witness containing statements contrary to his testimony is desired to be limited to impeach him, request to that effect should be made.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 632.]

11. APPEAL AND ERROR ⊚═══699(4)—SCOPE OF REVIEW—RECORD—SUFFICIENCY.

A statement that a defendant is entitled to have presented to the jury for decision by them any group of facts pleaded by it and developed in the trial which, if true, will in law establish a given defense, does not support assignments of error in refusal to give peremptory instruction, in overruling a special exception to the charge, and in refusing to submit a certain issue.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2929.]

12. MASTER AND SERVANT ⊚═══410—COMPENSATION ACT—ACTUAL NOTICE.

In employé's action for injuries, where the evidence showed that there was no constructive notice, if the employer desired submission of issue of actual notice, he should have requested it.

13. MASTER AND SERVANT ⊚═══404 — WORKMEN'S COMPENSATION ACT—ACTIONS FOR INJURIES—EVIDENCE—ADMISSIBILITY.

In employé's action for injuries, where the employer sought to show that she was a subscriber under the Workmen's Compensation Act, evidence that notices that she was a subscriber were posted after the accident was admissible.

14. MASTER AND SERVANT ⊚═══289(39) — INJURIES TO SERVANT—PROXIMATE CAUSE—QUESTIONS FOR JURY.

In laundry worker's action for injuries, it was proper to refuse to submit issue whether her negligence was the proximate cause of her injury, since, if she was in any degree negligent, such negligence must have been the proximate cause.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1131.]

15. MASTER AND SERVANT ⊚═══356 — WORKMEN'S COMPENSATION ACT — CONTRIBUTORY NEGLIGENCE.

Under the Workmen's Compensation Act, contributory negligence of the servant does not defeat recovery.

16. MASTER AND SERVANT ⊚═══385(17)—WORKMEN'S COMPENSATION ACT — CONTRIBUTORY NEGLIGENCE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 5246h, the damages to an injured servant would be diminished in proportion to the amount of negligence that might be attributed to her.

17. DAMAGES ⊚═══134(3)—EXCESSIVE DAMAGES.

Verdict of $10,000 in favor of employé who lost a hand, suffered with tetanus and blood poisoning, was in a hospital for three months, suffered terrible pain and agony, and paid out large sums for medicine and medical attention, and who when injured was 40 years old and earning $75 a month, whose earning power was greatly decreased, if not destroyed, and who was rendered unfit for the character of work to which she was accustomed, was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 368, 389–392.]

Appeal from Seventy-Third District Court, Bexar County; W. F. Ezell, Judge.

Action by Jessie Cross against Elizabeth S. Kampmann. On suggestion of defendant's death Ike S. Kampmann and another, as independent executors of her will, were made defendants. Judgment for plaintiff, and defendants appeal. Affirmed.

Kampmann & Burney and Terrell & Terrell, all of San Antonio, for appellants. Sylvan Lang, John Sehorn, and B. A. Greathouse, all of San Antonio, for appellee.

FLY, C. J. This suit was instituted by appellee for damages alleged to have accrued to her by reason of the loss of a hand while she was in the employment of Mrs. Elizabeth S. Kampmann, in the laundry department of the Menger Hotel, in the city of San Antonio. The grounds of negligence were in furnishing a defective mangle used in the laundry, which defect caused appellee's left hand to be caught and so mangled that it had to be amputated. The cause was submitted to a jury on special issues, and on the answers judgment was rendered in favor of appellee for $10,000. Before the cause was tried Mrs. Kampmann died, and her sons, two of whom, Ike S. Kampmann and John Herman Kampmann, were independent executors of her will, were made parties.

The evidence showed that appellee was injured by a defective mangle negligently furnished by appellants, and thereby lost her left hand. She was in the employ of appellants and earned her livelihood by manual labor.

Through the first, second, third, and fourth assignments of error appellants assert the proposition that the district court did not have original jurisdiction of this cause, but that, under the Employers' Compensation Act passed by the Thirty-Third Legislature (Acts 33d Leg. c. 179 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz]), the Industrial Accident Board had original jurisdiction.

The act in question was passed in 1913, and its objects, aims, and requirements are fully discussed by the Supreme Court in answer to certified questions in the case of Middleton v. Texas Power & Light Company, 185 S. W. 556. The operation of the act as applied to employers is thus summarized in that opinion:

"1. They may, at their election, become subscribers under the act, or what may be termed consenting members to its general scheme of liability and compensation, or remain without its pale.

"2. If they become subscribers and give the required notice to that effect to their employés, they are exempt from all common-law or other statutory liability for personal injury suffered

by such employés in their service, except that for exemplary damages where an employé is killed through an employer's willful act or omission or gross negligence, which may be defended against as under existing law.

"3. If they do not become subscribers, they are amenable to suits for damages recoverable at common law or by statute on account of personal injuries suffered by their employés in the course of their employment, and are denied the right of making what constitute the common-law defenses thereto. In such a suit, however, no recovery may be had against an employer except upon proof of his negligence, or negligence on the part of some agent or servant acting within the general scope of his employment, or where the employé willfully caused his own injury."

The following is the summary therein of the requirements of the law as applied to employés:

"1. They are at liberty to work or not to work for employers who are, or who may become, subscribers under the act.

"2. If they enter the service of a subscribing employer, or remain in his service after written or printed notice given by him that he is such an employer, and are injured in the course of their employment, a stated compensation, based upon their average wages, is paid them therefor, or to their representatives or beneficiaries in the event of death from the injury, without regard to whether the employer is liable therefor as at common law, and therefore without the necessity of proving negligence, through an agency provided by the act as the means of insuring such payment.

"3. Such employés as are injured in the service of subscribing employers who comply with the act are denied all right of action therefor against such employers, as are the representatives and beneficiaries of deceased employés for injuries resulting in death, except that the surviving husband, wife and heirs of any such deceased employé killed through the willful act or omission or gross negligence of such employer may maintain an action for exemplary damages on account of his death."

The Supreme Court held the act constitutional. The act is embodied in Vernon-Sayles' Tex. Civ. Stats. in articles from article 5246h to article 5246zzzz, inclusive.

It will be noted that, in order to obtain the benefits of the act employers must become subscribers or consenting members, and after becoming subscribers or consenting members, in order to obtain the exemptions provided for in case of injury to an employé in their service, they must give the notice required by the statute to the employé. That requirement is that written or printed notice must be given all employés that the employer is a subscriber, and that he has provided for payment by the association of compensation to the employé for injuries received by him in the course of his employment. The printed or written notice to the employé is the condition precedent to the benefits of the bill being appropriated by the employer. The employé is being deprived by the act of the right of obtaining redress for injuries in the courts of the state, and in order to do this a certain method of procedure is prescribed by the law. It must be in case he remains in the service of the employer after notice given as required by law.

While not directly passing upon the abso-lute necessity of the employer giving the statutory notice in order to obtain the protection therein provided for, the constant repetition of the necessity of notice clearly shows in the Middleton Case that it is the opinion of the Supreme Court that notice is absolutely essential. The status of the employé is fixed by the notice, and he can only escape the results of the act by leaving the employment of the subscriber. He has no choice, and cannot, as is the case in Massachusetts herein cited, retain his right under the common law by notice to the employer. The right to elect as to whether he would or would not retain his rights under the common law seems to be the pivotal point upon which the case was decided of Young v. Duncan, 218 Mass. 346, 106 N. E. 1. Under the Massachusetts statute it is provided that:

The employé "shall be held to have waived his right of action at common law to recover damages for personal injuries if he shall not have given his employer, at the time of his contract of hire, notice in writing that he claimed such right."

The Supreme Judicial Court of Massachusetts held that the plain and absolute provision of the statute was not dependent upon any other condition or circumstance. In Massachusetts notice is required of the employé, in Texas of the employer, and if it was essential that the employé should give notice to retain his common-law status, it must be as essential in Texas for the notice to be given by the employer in order to destroy such common-law right. The Massachusetts case is relied on by appellants to sustain the proposition that notice by the employer was not essential, but the opposite conclusion, it seems, should be drawn from the decision.

In the case of Daniels v. Boldt (W. Va.) 88 S. E. 613, and Bernard v. Traction Co., 188 Mich. 504, 154 N. W. 565, cited by appellants, it is held positively and directly that the employé is entitled to notice and without it he cannot be deprived of his common-law rights. In the West Virginia case it was held that it was absolutely necessary to show notice as required by the statute for the employer to avail himself of the law known as the "Workmen's Compensation Act." The Michigan case is to the same effect. In those states notice by posting is recognized by the statute, but in Texas the statute is silent as to how the notice shall be given; the only requirement being that it shall be written or printed.

[1] The plea in abatement was properly overruled. Appellee had the right to bring her suit for damages in the district court, and if appellants then desired to defend on the ground that Mrs. Kampmann had brought herself within the terms of the Texas Employers' Compensation Law, she could do so, and it then became a question of fact as to whether she had complied with the law so as to be a subscriber thereunder. The answer

to the question was reached, as it should have been, by the verdict of a jury.

In the Michigan cases cited by appellants it was held that the employé could not take advantage of the want of notice on the part of the employer, because the law peremptorily demanded that he give notice to his employer at the time of his employment that he would retain his common-law rights. No court has held, so far as we have ascertained, that where notice is required by law that it is not essentially necessary. We can readily see that there might be actual notice which might serve the purpose of written or printed notice, but to comply with the Texas statute there must be notice.

[2] The Texas law does not recognize the giving of notice by posting, and we are not prepared to hold that mere posting in the place of business would as a matter of law be notice. It might under certain circumstances be sufficient to show that an employé had actual notice, while under other circumstances it might be insufficient to convey notice to the employé. The posting of notices might be sufficient to carry the question of notice to the jury, but could not be held notice by the court.

[3] When courts permit the question of notice to become one of fact, they have given employers the benefit of as generous a construction of the statute as it will bear, for laws depriving citizens of rights possessed by them should be strictly construed, and a strict construction of the statute might require the placing of a written or printed notice in the hands of each employé in order to deprive him of his common-law right to go into a court and prove and recover his damages.

[4] There is no antagonism or conflict between article 5246yyy, which defines a subscriber and articles 5246x and 5246xx, which are on the subject of notice to the employé. The one defines a subscriber; the others require certain duties of the employer to obtain the benefits of the law. They are easily reconciled. It cannot be supposed that the Legislature intended that the employer should, without notice, deprive the employé of his common-law rights, and protect the employer at the expense of the employé. It would be oppressive and unjust to deprive an employé of his rights under the common law, when injured by his employer, without notice.

[5] The evidence was conflicting as to whether the notices were posted. At least four witnesses, appellee among the number, swore that they never saw any such notices, and at least three swore positively that they had not been posted either in the laundry where appellee worked or other parts of the hotel. The evidence was ample to justify the jury in finding that notice had not been given to appellee. Even if the posting of notices could be held to comply with the statute, the posting was an issue of fact determined by the jury adversely to appellants. The uncertainty of Stanish, who testified as to posting the notices, as to when the notices were posted, was sufficient to weaken his testimony and justify a finding against it. Mrs. Nelson was not positive as to when she received the notices.

[6, 7] The eighth assignment of error is overruled. The requested charge ignored the question of notice, and instructed a verdict if Mrs. Kampmann was a subscriber under the law. We are of the opinion that, although Mrs. Kampmann was a subscriber under the law, still she might be liable under the common law if she failed to give appellee the required notice. She may have become a member of the association by paying a year's premium in advance and have received the receipt of the association therefor, the association being duly licensed; still she would be liable at common law to appellee unless she had given her notice as required by law. The giving or not of the notice did not affect Mrs. Kampmann's subscription, but it would not avail her except as to employés notified. She might be able to claim the benefit of the law as to one employé and not as to another. She was still a subscriber, although she could not claim the benefits attached thereto so far as appellee was concerned. That is the plain intention of the law. It was not necessary to submit the question of Mrs. Kampmann being a subscriber to the jury. That could not be disputed.

[8] It is true that it is provided in article 5246i that the employés of a subscriber to the association shall have no right of action against the employer for damages for personal injuries, but that article must be construed with articles 5246x and 5246xx, which require notice to employés. So far as the employé who has not been notified is concerned, the employer is not a subscriber. The notice creates the relation of subscriber employer and employé, and without the notice the relation cannot exist.

The foregoing is, as before stated, undoubtedly the construction placed upon the statute by the Supreme Court, for it is held:

That every employer becoming a subscriber "is required to give written or printed notice to all employés"; that, "if they become subscribers and give the required notice to that effect to their employés, they are exempt from all common-law or statutory liability for personal injury suffered in their service. * * *"

These quotations show that the Supreme Court is of the opinion that in order to be protected from suits the employer must not only subscribe, but he must give notice of such subscription to the employé. Again, in noting the effect of the act as to employés, it is stated:

"If they enter the service of a subscribing employer, or remain in his service after written or printed notice given by him that he is such an employer," a stated compensation is paid them.

Again it is held that all right of action is denied employés against employers who are "subscribing employers who comply with the act." It was unnecessary to mention notice in connection with other matters that are essential to bring employer and employé within the law, if notice was not an absolute condition precedent. The act is not compulsory upon the employé, and he cannot be brought within its scope without a compliance upon the part of the employer with every requirement of the statute. The law was passed largely for the benefit of the employé, but he must be a willing beneficiary.

The purpose of requiring notice to employés by such statutes is well stated by the West Virginia court in the case of Daniels v. Boldt, herein cited:

"The plain object of the statute in requiring notice is that employés thereafter continuing in the employment may be thereby charged, as provided, with waiver of their common-law rights of action against the employer for injuries sustained due to defendant's negligence while engaged in such employment."

The West Virginia statute is no more mandatory in requiring notice than is the Texas statute; the only material difference being that the former provides for posting the notices.

It is well said by the Michigan circuit judge in an opinion adopted by the Supreme Court of that state in Bernard v. Traction Co., herein cited:

"But it seems to me an essential part of the scheme of the act that the employé have the right of choice. This implies first, actual or constructive notice of the employer's election and actual submission to the law, and then the right of the employé to choose by giving written notice or abstaining from it. Robbed of this opportunity, he is practically deprived of the right; and, if this is the real meaning of the statute, it is oppressive, an invasion and deprivation of individual right, and hardly to be tolerated or enforced."

The language applies with all its force to the Texas statute.

[9] The undated, unsigned, but identified written statement made by the witness Wilke was properly admitted for the purpose of impeaching him. He had sworn on the trial that notices were posted in the hotel, and in a written statement that had been read to him before the trial, but which he had not signed, he said no notices had been given or posted in the hotel. The statement was properly admitted in evidence. Cross v. McKinley, 81 Tex. 332, 16 S. W. 1023; Faseler v. Kothman, 70 S. W. 321.

[10] If it was desired that the statement be limited to purposes of impeachment, appellants should have requested the court to so limit it. Shumard v. Johnson, 66 Tex. 70, 17 S. W. 398; Walker v. Brown, 66 Tex. 556, 1 S. W. 797; Railway v. Johnson, 72 Tex. 95, 10 S. W. 325; Railway v. George, 85 Tex. 150, 19 S. W. 1036; Payne v. Snyder, 160 S. W. 1153; Sullivan v. Fant, 51 Tex. Civ. App. 6, 110 S. W. 507; Insurance Co. v. Baker, 10 Tex. Civ. App. 515, 31 S. W. 1072.

[11, 12] The tenth, eleventh, and twelfth assignments are on different subjects and are improperly grouped. The tenth seeks to present error in a refusal to give a peremptory instruction; the eleventh complains of the court refusing to sustain a "special exception" to the charge; and the twelfth claims error in a refusal to submit a certain issue. The only proposition is that "a defendant is entitled to have presented to the jury for decision by them any group of facts pleaded by it and developed in the trial, which, if true, will in law establish a given defense," which is not pertinent to either of the assignments. The statement fails to show that a peremptory instruction was requested. The objection to the charge embodied in the eleventh assignment is because of an omission in the charge, and the court properly refused to present an issue as to whether appellee had heard that "the defendant had insurance on their help." If appellants wanted the issue of actual notice to appellee that appellants had insurance in the association provided for in the Employers' Liability Act, they should have asked it. The requested charge did not submit the issue. The testimony did not show that appellee had any notice, actual or constructive, that Mrs. Kampmann was a subscriber under the Employers' Liability Act.

The evidence did not show that notices were posted, but, on the other hand, the jury was justified in finding that they were not posted. The issue was properly presented by the court. The thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth assignments of error are overruled.

The eighteenth, nineteenth, twentieth, twenty-first, twenty-second, and twenty-third assignments are on different subjects, but are grouped. There are four propositions which it is stated are made under all of the assignments. There being four different subjects involved, it is apparent that no proposition can be pertinent to all of them. The assignments are overruled.

[13] The evidence to the effect that notices were placed in the hotel after the accident and were not seen there before was material and pertinent, and was properly admitted. The twenty-fourth assignment of error is overruled. If there had been any force in the objection to the evidence, it was destroyed by the fact that other testimony, to the effect that notices were posted after, and not before, the accident, was admitted without objection upon the part of appellants. In fact, appellants brought out on the cross-examination of appellee that there were "no notices in the Menger at all at that time I was hurt; they were put up after I was hurt, in Mexican and English."

The twenty-fifth, twenty-sixth, twenty-seventh, and twenty-eighth assignments of

error are grouped. The twenty-fifth complains of the refusal of this court to present a special issue as to whether certain things which it is assumed that appellee had done or omitted were the proximate cause of her injury, or certain omissions on the part of appellants were the proximate cause. The twenty-sixth presents error in overruling what are denominated "defendants' special exceptions to the main charge." The twenty-seventh assignment of error is to the same effect as the twenty-sixth, both seeking to raise the question of the failure of the court to submit an issue as to the negligence of appellee being the proximate cause of her injury. The twenty-eighth assignment claims that a judgment could not be rendered on the issues, because the jury found that the defective mangle was the proximate cause of the injury, and yet found that appellee was guilty of contributory negligence. The argument is that, if appellee was guilty of contributory negligence, that must necessarily have been the proximate cause of the injury. The only proposition under the assignments is that, if the jury found that appellee was guilty of contributory negligence, it must necessarily have been the proximate cause of the injury.

[14] This proposition destroys the effect of all the assignments except the twenty-eighth; for under the proposition it was unnecessary to submit the question of proximate cause, because the submission of appellee's negligence was a submission of such negligence being the proximate cause of the injury. Under the facts of this case, if appellee was negligent, such negligence was necessarily a proximate cause of her injury. The accident would not have occurred if she had stopped the machine or had kept her hand away from it and she would not have been hurt. It was not only unnecessary to present to the jury the issue as to whether the negligence of appellee was a proximate cause of her injury, but it would have been positive error to have done so. Railway v. McCoy, 90 Tex. 264, 38 S. W. 36; Railway v. Rowland, 90 Tex. 365, 38 S. W. 756; Culpepper v. Railway, 90 Tex. 627, 40 S. W. 386; Railway v. Lester, 99 Tex. 214, 89 S. W. 752; Coffee v. Railway Co., 104 Tex. 127, 134 S. W. 1174.

[15] If the acts of appellee were necessarily a proximate cause of her injury, that, under the common law, would have precluded a recovery by her, but this case is being tried under a law that has provided that contributory negligence, where a defendant has been negligent, will not preclude a recovery, but the damages will be reduced in the proportion that the plaintiff was negligent. There could be two or more causes concurring that might produce a certain result, and under the application of the rule of comparative negligence, whenever the employers named in the law are guilty of negligence, the employés are authorized to recover no matter how neg-

ligent they may have been. Railway v. Galbreath, 185 S. W. 901. It follows that the assignments of error must be overruled.

[16] It is provided in article 5246h, Rev. Stats., that:

"In an action to recover damages for personal injuries sustained by an employé in the course of his employment, or for death resulting from personal injury so sustained, it shall not be a defense: 1. That the employé was guilty of contributory negligence."

And then the rule of comparative negligence is made applicable under such circumstances.

It follows that there is no force in the contention that the verdict was inconsistent in finding that appellee was guilty of negligence and then find a verdict in her favor. Comparative negligence was explained to the jury, and they were instructed to diminish the amount of damages awarded the plaintiff in proportion to the amount of negligence that might be attributed to appellee. This was the proper statement of the rule of comparative negligence which is made applicable to such cases. The court did not err in refusing the special issue asked by appellants on comparative negligence.

[17] This court cannot under the facts hold that a verdict for $10,000 for the loss of a hand evidences any prejudice, and that it is excessive. The evidence showed that the left hand of appellee was amputated; that she suffered with tetanus and blood poisoning; that she was in a hospital for three months, suffered terrible pain and agony, and paid out large sums for medicine and medical attention. She was, when injured, about 40 years old, and was earning $75 a month. Her earning power has been greatly decreased, if not destroyed, she has lost valuable time, and will continue to lose it, and is unfitted for the work to which she was trained. While precedents for amounts that have been sustained are not conclusive, they may be persuasive, and there are Texas precedents for sustaining even larger verdicts for loss of a hand. Railway v. Beauchamp, 54 Tex. Civ. App. 123, 116 S. W. 1163; Freeman v. Grashel, 145 S. W. 695. Writs of error were refused in those cases, but that adds nothing to their force, because questions of excess in verdicts are those of fact, over which the Supreme Court has no jurisdiction.

The jury in this case found that appellee was guilty of contributory negligence, but did not find what it amounted to, and in order to enable this court to pass intelligently upon what amount should have been deducted from her damages that issue should have been requested by appellant and submitted to the jury. The jury may have deemed appellee's negligence so slight as to require only a nominal sum to be deducted, or may have thought her negligence sufficient to cause her to lose a large sum. If the jury had found what the negligence of appellee amounted to in dollars, this court would be

in a much better position to pass on the question of excess. As it is, we cannot say, under the evidence, that the verdict is excessive.

The judgment is affirmed.