## LLOYD v. CHRISTIAN.
### No. 9769.

Court of Civil Appeals of Texas. Galveston.

Oct. 28, 1932.

L. A. Kottwitz and A. B. Wilson, both of Houston, for appellant.

GRAVES, J.

In this cause appellant, D. C. Lloyd, challenges a judgment of the court below against himself and his mother, Mrs. N. E. Lloyd, in favor of the appellee for the cancellation of a deed from the mother to the son for four 40-acre tracts of land in Harris county, dated November 26, 1929, upon a finding that the conveyance had been made with a view and intent to hinder, delay, and defraud the grantor's creditors—a money recovery in the sum of $2,420.45 against Mrs. Lloyd alone upon her unsecured individual note to the appellee having been also awarded, and an attachment writ against the land having been sued out pending the trial.

Trial was before the court without a jury; findings of fact and law were filed, in which it was recited that the conveyance of the land, aggregating 160 acres, had been made for the stated consideration of $20,010, of which $10 was to be in cash, the remaining $20,000 being evidenced by a promissory note from the son to his mother, due two years after date; that the conveyance was a violation of the statute, R. S. article 3996, for the reason already stated, Mrs. Lloyd being insolvent at the time, having no other property in the state sufficient to pay her debts, owing the appellee the debt sued upon, as well as other parties at the time, which facts the appellant then knew; that no part of the $20,000 note had ever been paid, nor any ability upon the maker's part to pay it within the two years being shown, and, further, that both in 1919 and 1929 Mrs. Lloyd had signed and acknowledged, in connection with loans upon the same property from the Federal Land Bank and the Farm Loan Association in Pasadena, Tex., statements to the effect that the land so conveyed to her son did not on those dates constitute her homestead, the latter of these declarations having been made only a few days before the institution of this suit.

To these summarized findings there were added conclusions of law, finding Mrs. Lloyd to be indebted to the appellee in the amount of the money recovery stated, together with these two concluding paragraphs:

"The court further finds as a Conclusion of Law that the conveyance of Mrs. N. E. Lloyd to D. C. Lloyd was fraudulent and made with the view and intent to hinder, delay and defraud her creditors and among others this Plaintiff and for said reason should be cancelled, set aside, declared void and held for naught.

"The court further finds as a Conclusion of Law that at the date of the institution of this suit, tracts No. 96, 97, 98 and 99, as set forth in the Findings of Fact herein, did not constitute the homestead of Mrs. N. E. Lloyd."

On the appeal the judgment so rendered, as well as the findings of both fact and law upon which it had been grounded, are attacked on the ground that they were without evidence to support them, in that the undisputed testimony shows that the property thereby conveyed at the date of the deed constituted the homestead of Mrs. Lloyd and her family, by reason of which she had the right to so convey it, and that the transaction in the circumstances could not be deemed fraudulent in law.

After a careful examination of the record, we conclude this position must be sustained.

The four tracts of land were not in a town or city, being located nearby but not in the small village of Alief in Harris county, were contiguous, were alleged to constitute the homestead, within the meaning of R. S. articles 3832, 3833, of Mrs. Lloyd and her family, which at the date of the conveyance in question consisted of herself (she being a widow) and one minor child, and the undisputed proof conclusively showed that they had all been used, occupied, cultivated, and enjoyed as such homestead continuously for 20 years or more prior to and at the time of her deed, with the exception of about one year along about 1919 or 1920, when Mrs. Lloyd temporarily sojourned in the city of Houston for the purpose of having her children attend school there; indeed, the evidence is so conclusive and overwhelming to this effect that it is not deemed essential that it be even summarized here, neighbors, old friends, and other witnesses, who had direct and personal knowledge of such facts, appearing and fully testifying to them.

■ It seems the finding of fact to the contrary, there being no other support of it, was grounded upon the previously-mentioned recitation in the deeds of trust from Mrs.

Lloyd to the Federal Land Bank and the Farm Loan Association in Pasadena to the effect that this land had not constituted her homestead in the years 1919 and 1929; aside from the fact that the agent of these institutions who negotiated and acted for them in these transactions with Mrs. Lloyd undisputedly testified on this trial that she at the time neither read the instruments nor was told that such statements were in them, having merely taken his word for what they were when she executed them, such declarations should neither have been considered by the court at all, nor given any force in determining whether or not the property constituted the family homestead, in the face of its actual use at that very time and long prior thereto for such purpose, since, by the long-settled rule of law in this state, they could not change the homestead character thereby fastened upon it. Medlenka v. Downing, 59 Tex. 32–39; Jacobs, Bernheim & Co. v. Hawkins, 63 Tex. 1, 2; Ruhl v. Kauffman & Runge, 65 Tex. 723–734; Radford & Wood v. Lyon, 65 Tex. 471–475; Equitable Mortgage Co. v. Norton, 71 Tex. 683–689, 10 S. W. 301; Texas Land & Loan Co. v. Blalock, 76 Tex. 85–89, 13 S. W. 12; Bayless v. Guthrie (Tex. Com. App.) 235 S. W. 843–846; Wooten v. Jones (Tex. Civ. App.) 286 S. W. 680–687.

What might be the effect of those recitations in a direct action on the contracts containing them between Mrs. Lloyd and those federal organizations is, of course, not here involved.

■ As between these litigants, under the uncontroverted and conclusive proof that she was then not only the head of a family within the purview of both our fundamental and statutory law, but also in actual occupancy and use of the property as the homestead thereof, its exemption to them was complete, hence the appellee, as a mere unsecured creditor, could acquire no right against it, and its voluntary sale could in no sense constitute a fraud upon her. Cox v. Shropshire, 25 Tex. 113; Conner v. Hawkins, 66 Tex. 639, 2 S. W. 520; Hargadene v. Whitfield, 71 Tex. 482, 9 S. W. 475; Zapp v. Strohmeyer, 75 Tex. 638, 13 S. W. 9; Speer & Goodnight v. Sykes, 102 Tex. 451, 119 S. W. 86, 132 Am. St. Rep. 896; Uvalde Paving Co. v. Kennedy (Tex. Civ. App.) 22 S.W.(2d) 1091.

■ Neither, in the light of other evidence, do the deed itself, which also conveyed six unincumbered lots of the aggregate value of $150, in addition to the 160-acre homestead, and the $20,000 negotiable promissory note given as the consideration thereof intrinsically constitute any evidence of fraud, nor of an intent to perpetrate it; the appellee and Mrs. Lloyd's daughter, to the latter of whom she owed some $7,500 were her only unsecured creditors; a group of secured creditors, including the federal loan concerns referred to, the First National Bank of Houston, and others, held liens against the homestead tracts amounting to only about $365 less than the full value of all the land conveyed, and this total incumbrance was to be deducted from the amount of the note.

It was, in these circumstances, under the equally well-settled rule with us, the absolute right of the mother to convey all of her property (inclusive of the homestead and the lots) to the son, accept his negotiable promissory note in payment therefor, and to assign and deliver it to her daughter in cancellation of her indebtedness to the latter, even if that did constitute a preference of the daughter over the appellee, there being further no evidence of any probative force either that the mother as such grantor intended in so making the conveyance to hinder, delay, or defraud her creditors, or that the son in accepting it, knew of such an intent, or should have known of it as he was then circumstanced, had he made a reasonable investigation. Lewy v. Fischl, 65 Tex. 311; Ellis v. Valentine, 65 Tex. 532; Tillman v. Heller, 78 Tex. 597, 14 S. W. 700, 11 L. R. A. 628, 22 Am. St. Rep. 77; LePage v. Slade, 79 Tex. 473, 15 S. W. 496; Cross v. McKinley, 81 Tex. 332, 16 S. W. 1023; Sanger Bros. v. Colbert, 84 Tex. 668, 19 S. W. 863; Adams v. Williams, 112 Tex. 469, 248 S. W. 673; Williams et al. v. Laird (Tex. Civ. App.) 32 S. W.(2d) 502; Ford v. Honse (Tex. Civ. App.) 225 S. W. 860.

Further discussion is deemed unnecessary, since these conclusions determine the merits of the appeal; they require that the judgment be reversed, and the cause here rendered in appellant's favor. It will be so ordered.

Reversed and rendered.